UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

          -against-

                              **MEMORANDUM AND ORDER**
CHRISTHIAN ISAAC MEZA, also                        18-CR-270 (DLI)
known as Cristian Meza,

                        Defendant.
-----------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

Christhian Isaac Meza ("Defendant") is charged with illegally reentering the United States after his deportation for committing two crimes involving moral turpitude ("CIMT") under 8 U.S.C. §§ 1326(a) and (b)(1). Indictment, Docket Entry No. 7. Before the Court is Defendant's motion to dismiss the indictment pursuant to 8 U.S.C. § 1326(d) and Rule 12 of the Federal Rules of Criminal Procedure on the grounds that the proceedings resulting in his 2010 removal order were fundamentally unfair. Mot. to Dismiss the Indictment, Docket Entry No. 25.

Relying on the Second Circuit's recent decision in *Obeya v. Sessions*, 884 F.3d 442, 450 (2d Cir. 2018), Defendant contends that the removal order is facially deficient because his petit larceny conviction under N.Y. Penal Law § 155.25 was not a CIMT at the time of his removal proceedings. Defendant also collaterally attacks the indictment contending that he received ineffective assistance from his attorney during the removal proceedings ("Immigration Counsel") because the attorney failed to advise him that whether New York petit larceny was a CIMT was a litigable issue. The Government counters that Defendant does not meet his burden to collaterally attack the indictment and that his removal proceedings were fundamentally fair because Defendant was advised sufficiently on the state of the law in the Fifth Circuit and the BIA at the time of the removal proceedings.

On July 27, 2018, Defendant filed the motion to dismiss the indictment and accompanying memorandum. Defendant's Memorandum of Law ("Def.'s Mem."), Docket Entry No. 25-7. The Government opposed, filing a redacted version on the public docket.[1] Government's Memorandum of Law in Opposition (Redacted) ("Govt.'s Mem."), Docket Entry No. 27. Defendant replied to the Government's opposition. Defendant's Memorandum in Reply (Def.'s Reply"), Docket Entry No. 30.

For the reasons that follow, Defendant's motion is granted.

## BACKGROUND

The following undisputed facts are taken from the Declaration of Michael D. Weil ("Weil Decl."), Docket Entry No. 25-1; the Declaration of Francisco Tinoco ("Tinoco Decl."), Docket Entry No. 27-3; the audio recording of the removal order hearing ("Removal Hearing Audio"), Docket Entry No. 27-4; the declaration of Defendant ("Meza Decl."), Docket Entry No. 25-2; and the Indictment.

Defendant was born in Peru in 1982 and is a citizen of Peru. In 1997, Defendant entered the United States as a legal permanent resident at the age of fourteen. Weil Decl. ¶ 3. On December 29, 2009, the Department of Homeland Security ("DHS") served Defendant a notice to appear, for the purpose of removal, pursuant to 8 U.S.C. § 237(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA"). Weil Decl. ¶ 5. The notice to appear alleged that Defendant was subject to removal based on his conviction for two CIMTs. *Id.*; *See*, 8 U.S.C. § 237(a)(2)(A)(ii) ("Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor

---

[1] The Government also filed an unredacted version of its memorandum in opposition under seal. Government's Memorandum of Law in Opposition (Unredacted), Docket Entry No. 28. All references to the Government's opposition in this Memorandum and Order refer to the redacted version.

and regardless of whether the convictions were in a single trial, is deportable."). Specifically, the notice to appear set forth that Defendant pled guilty to and was sentenced for: (1) reckless endangerment in the first degree, in violation of N.Y. Penal Law § 120.25, on March 1, 2004, and (2) petit larceny, in violation of N.Y Penal Law § 155.25, on September 18, 2009.[2] Weil Decl. ¶ 4.

On February 1, 2010, an initial removal proceeding was held in Harlington, Texas before Immigration Judge Howard E. Achtsam (the "IJ"). Francisco Tinoco, Defendant's Immigration Counsel, was present. Tinoco Decl. ¶ 1. At the hearing, Immigration Counsel requested a continuance, which the IJ granted. *Id.*

On March 15, 2010, the IJ held the removal hearing at which Defendant and Immigration Counsel were present. The IJ confirmed that Defendant had received the notice to appear. Defendant waived an instruction of his rights and admitted to the six factual allegations contained in the removal notice. After Defendant's allocution, the IJ concluded that Defendant was subject to removal because "reckless endangerment in the first degree is a crime involving moral turpitude, as is petit larceny." Removal Hearing Audio at 2:08-21.

During the hearing, the IJ asked Immigration Counsel whether Defendant sought relief from removal. *Id.* at 2:36. Immigration Counsel responded, "No he is not Your Honor; he has requested to be deported." *Id.* at 2:38-42. The IJ inquired further stating: "It appears he may be eligible to apply for cancellation of removal; there is a question about that however. Reckless endangerment . . . the date of his arrest is May 10, 2003, and that may cut off his continuous residence for purpose of cancellation of removal, but I can't determine that time. . . . does

---

[2] Defendant was sentenced initially on December 11, 2007 and resentenced on September 18, 2009. Weil Decl. ¶ 4.

respondent want to apply for cancellation of removal?" *Id.* at 2:51-3:23. Immigration Counsel replied, "the Respondent has informed me that he would like to request deportation at this time." *Id.* at 3:24-28. The IJ then asked, "So he doesn't want to request cancellation of removal?" *Id.* at 3:29-34. Immigration Counsel replied, "that's correct." *Id.* at 3:36. The IJ then asked Defendant directly, "your attorney has stated that you want an order of deportation to Peru. Is that correct?" *Id.* at 3:49-55. Defendant replied, "yes sir." *Id.* at 4:00. Accordingly, the IJ ordered that Defendant be deported to Peru. *Id.* at 4:01-06. Defendant waived his right to appeal on the record. *Id.* at 4:07-09.

Defendant was removed from the United States on April 27, 2010. Weil Decl. ¶ 10. He reentered the United States in 2011 and was removed a second time, without prosecution, on November 30, 2011. *Id.* Sometime later, Defendant reentered the United States. On April 10, 2018, Defendant was detained and charged with illegal reentry under 8 U.S.C. §§ 1326(a) and (b)(1). Indictment at 1.

In connection with the present motion, Immigration Counsel submitted a declaration describing his representation of Defendant during the removal proceedings. *See generally,* Tinoco Decl. Immigration Counsel attests that he has over 17 years of experience in immigration matters and is admitted in Texas, New York, and the District of Columbia. *Id.* ¶ 1. He further attests that he advised Defendant of his rights during the removal proceeding, including his right to contest or concede removability, his right to appeal an adverse decision by the IJ to the Board of Immigration Appeals ("BIA"), and his right to move for cancellation of the removal order. *Id.* ¶ 5. Immigration Counsel declared further that, "[a]t the time of [Defendant's] removal proceedings, [he] understood from [his] experience and case law that petit larceny was a crime involving moral

4

turpitude in the Fifth Circuit." *Id.* ¶ 6. Immigration Counsel also declared that he "would not have asked for [Defendant's] [r]emoval, on his behalf, . . . had that not been [his] desire." *Id.* ¶ 7.

Defendant avers that he does not recall meeting Immigration Counsel. Meza Decl. ¶ 2. However, Defendant does recall "meeting with a woman and discussing the case, but [he is] not sure if she was [his] lawyer or [a] government lawyer." *Id.* Defendant maintains that the individual told him he "could only succeed if [he] could reopen [his] prior criminal cases," and that it would "take years and had very little chance of success." *Id.*

Defendant now collaterally attacks the indictment on the ground that the 2010 removal order is facially deficient because his removal proceedings were fundamentally unfair and deprived him of the ability to exhaust his administrative remedies and of the opportunity for judicial review. Defendant contends Immigration Counsel improperly advised him that petit larceny under New York law is a CIMT, when, at the time of the removal proceedings, it was an open question and appealable issue of law.

The Government contends that the removal order is not facially deficient because Fifth Circuit and BIA case law had suggested that petit larceny, and larceny generally, was a CIMT and that the BIA had not clearly decided by 2010 whether New York's petit larceny was a CIMT. The Government also contends that Defendant's 2010 removal proceedings were fundamentally fair, and that Defendant failed to exhaust his administrative remedies or seek judicial review.

For the reasons set forth below, Defendant's motion is granted.

## DISCUSSION

**I.**  **Legal Standard**

Under 8 U.S.C. § 1326(d) ("§ 1326(d)"), a removeable person may collaterally attack an illegal reentry charge by challenging the validity of the underlying deportation order if

5

> (1) the [removeable person] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the [removeable person] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); *See also*, *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987). A defendant must establish all three requirements in order to challenge his removal order successfully. *United States v. Ferbandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2001).

An ineffective assistance of counsel claim challenging a deportation order may be addressed under the fundamental unfairness prong of § 1326(d). *United States v. Scott*, 394 F.3d 111, 113 (2d Cir. 2005). Moreover, ineffective assistance of counsel under the fundamental unfairness prong of § 1326(d) may serve as grounds for a court to excuse a defendant's failure to exhaust his administrative remedies and seek judicial review. *See*, *United States v. Cerna*, 603 F.3d 32, 42 (2d Cir. 2010); *See also*, *United States v. Klim*, 2014 WL 4403153, at *3 (D. Vt. Aug. 18, 2014) ("Under Second Circuit law, ineffective assistance alone may satisfy § 1326(d)."). Consequently, the Court begins by first examining the third prong of § 1326(d), the fundamental unfairness of the removal order.

## II. Fundamental Unfairness Because of Ineffective Assistance of Counsel

"An [individual subject to a removal proceeding] enjoys no specific right to counsel, but only a general right to due process of law under the Fifth Amendment of the Constitution." *Zheng v. U.S. Dep't of Justice*, 409 F.3d 43, 46 (2d Cir. 2005); *Saleh v. U.S. Dep't of Justice*, 962 F.2d 234, 241 (2d Cir. 1992). "[I]n order to prevail on an ineffectiveness claim, a [removeable person] must show that his counsel's performance was so ineffective as to have impinged upon the fundamental fairness of the hearing." *Zheng*, 409 F.2d at 46 (internal quotation marks and citations omitted).

"The burden of establishing both constitutionally deficient performance and prejudice is on the defendant." *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Generally, "strategic choices made by counsel after a thorough investigation of the facts and law are 'virtually unchallengeable,' though strategic choices 'made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Thomas v. Kuhlman*, 255 F. Supp.2d 99, 107 (E.D.N.Y. 2003) (quoting *Strickland*, 466 U.S. at 690-91).

Defendant contends that Immigration Counsel's failure to inform him that New York's petit larceny offense may not be a CIMT constitutes fundamental unfairness and excuses his failure to exhaust his administrative remedies and deprived him of the opportunity for judicial review. Def.'s Mem. at 2. Specifically, Defendant contends that, as determined by the Second Circuit in *Obeya v. Sessions*, seven decades of Board of Immigration Appeals ("BIA") precedent held that, in order to be a CIMT, petit larceny required a permanent taking and New York's petit larceny statute did not require a permanent taking. As such, Immigration Counsel's performance was constitutionally deficient because he failed to advise Defendant of this requirement that would have enabled Defendant to challenge the removal order.

The Government, in turn, contends that Defendant does not meet his burden to collaterally attack the indictment because Defendant: (1) failed to exhaust his administrative remedies or seek judicial review, (2) was not misinformed about or denied his right to appeal the IJ's decision; and (3) Immigration Counsel's performance was not deficient for failing to anticipate later developments in the law. Govt.'s Mem. at 7.

To establish a deportation order's fundamental unfairness under § 1326(d)(3), a defendant must show "'both a fundamental procedural error and prejudice resulting from that error.'" *United*

*States v. Williams*, 733 F.3d 448, 455 (2d Cir. 2013) (quoting *Cerna*, 603 F.3d at 40-41; *Scott*, 394 F.3d at 117). "In other words, he must show (1) that a competent attorney would not have made the error; and (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Cerna*, 603 F.3d at 40-41) (quotations in original removed).

### A. Immigration Counsel's Performance Was Deficient

#### 1. <u>Immigration Counsel Committed a Mistake of Law</u>

Under N.Y. Penal Law § 155.25, "[a] person is guilty of petit larceny when he steals property." N.Y. Penal Law § 155.25. Defendant contends that New York petit larceny was not a CIMT at the time of the 2010 removal proceedings because the statute does not require a permanent deprivation of property for conviction.

At the time of Defendant's 2010 removal, "a conviction for theft [was] considered to involve moral turpitude only when a permanent taking [was] intended. . . . [, however,] in some cases the BIA . . . stated that larceny is a CIMT without distinguishing between a permanent and a temporary taking." *Wala v. Mukasey*, 511 F.3d 102, 106 (2d Cir. 2007) (Sotomayor, J.) (citing *In re Westman*, 17 I. & N. Dec. 50, 51 (B.I.A. 1979)). In 2016, the BIA spoke on the issue in *In re Diaz-Lizarraga*, 26 I. & N. Dec. 847 (B.I.A. 2016), holding that a theft crime is a CIMT when there is "an intent to deprive the owner of his property either permanently or under circumstances where the owner's property rights are substantially eroded." *Id.* at 854. The BIA specifically analyzed New York's petit larceny statute, concluding that its language met the BIA's *new* "substantially eroded" standard for deprivation of property. *Id.* at 853 (emphasis added). On the same day the BIA issued *Diaz-Lizarraga*, it also applied the rule retroactively to Obeya's case. *Matter of Obeya*, 26 I. & N. Dec. 856 (B.I.A. 2016).

In *Obeya v. Sessions*, 884 F.3d 442, 444-45 (2d Cir. 2018), the Second Circuit found that the BIA in *Diaz-Lizarraga* announced a new adjudicatory rule for theft CIMTs, and, consequently, held that *Diaz-Lizarraga* could not apply to Obeya because it had an impermissible retroactive effect. *Id.* at 448. The Circuit further held that defendants in deportation proceedings involving larceny were entitled to "rely on seven decades of BIA precedent . . . holding that larceny offenses involve moral turpitude only when a permanent taking is intended." *Id.* at 448-49. "For decades, the BIA applied *one rule*: that a larceny offense constitutes a crime involving moral turpitude *only* when the larceny statute in question *required*, as had the common law, an intent to deprive the victim of property permanently." *Id.* at 446 (emphasis added). Applying the categorical approach,[3] the Second Circuit concluded that "a conviction for petit larceny in New York need not involve an intent to permanently deprive another of property." *Id.* at 450. In another post-*Diaz-Lizarraga* opinion, the Fifth Circuit[4] in *Chacon v. Sessions*, acknowledged that, "[t]raditionally, the BIA considered a theft or larceny statute a CIMT only if it included as an element the 'intent to permanently deprive an owner of property.'" 704 F. App'x 360, 361 (5th Cir. 2017) (citing *In re Diaz-Lizarraga*, 26 I. & N. Dec. at 849).

---

[3] "When the government alleges that a prior state conviction may serve as a predicate offense for removal under" the INA, courts "employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA." *Obeya*, 884 F.3d at 447 n.4 (citing *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013)). "Under the categorical approach, [courts] consider the offense generically, that is to say, [they] examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Id.* (citing *United States v. Beardsley*, 691 F.3d 252, 259 (2d Cir. 2012) (internal quotation marks omitted)). Notably the new rule announced by the BIA in *Diaz-Lizarraga* does not apply the categorical approach as it looks at the circumstances underlying the taking of property to determine whether it qualifies as a CIMT.

[4] Since Defendant's removal proceedings occurred in the Fifth Circuit, the IJ would have interpreted the New York statute under Fifth Circuit precedents of statutory interpretation. *See, e.g.*, *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013) (Supreme Court examining Fifth Circuit's categorical analysis of Georgia drug possession statute).

Thus, while prior to *Obeya*, *Chacon*, and *Diaz-Lizarraga*, the Second and Fifth Circuit had not addressed directly the question of whether larceny offenses require a permanent taking in order to be a CIMT, such was the rule in decades of BIA cases. Defendant thus contends that Immigration Counsel should have recognized that whether petit larceny under New York law was a CIMT, at the very least, was an open question in the Fifth and Second Circuits, and should have: (1) conducted a categorical analysis of the statute, and (2) advised Defendant about litigating the issue. Def.'s Reply at 1. Immigration counsel did neither. The Government counters that: (1) the Fifth Circuit "had examined multiple larceny statutes and had suggested that petit larceny, and larceny generally, was a CIMT," and (2) "the BIA had not clearly decided by 2010 whether petit larceny, in violation of New York code, was a CIMT[,] [h]owever, the BIA strongly suggested it was." Govt.'s Mem. at 7-8.

The Government relies on five Fifth Circuit and four BIA decisions decided before *Chacon* and *Diaz-Lizarraga* in support of its position. Notably, the Fifth Circuit decisions relied on by the Government did not examine New York's petite larceny statute. In *Okoro v. I.N.S.*, 125 F.3d 920 (5th Cir. 1997), the most recent Fifth Circuit decision, the court held that larceny under a *Delaware* theft statute was a CIMT, even though that statute did not expressly include the intent to permanently deprive another of goods. *Id.* at 926. However, *Okoro* was decided before the Supreme Court required courts to conduct a categorical analysis when examining whether a state offense is comparable to a generic definition of an offense listed in the INA. *See, e.g.*, *Nijhawan v. Holder*, 557 U.S. 29, 33-38 (2009); *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185-87 (2007). Significantly, this law was in effect the time of Defendant's removal proceedings in 2010.

In addition to *Okoro*, the Government relies on *Hodulik v. I.N.S.*, 1993 WL 309851 (5th Cir. May 12, 1993) (unpublished), *United States v. Smith*, 420 F.2d 428 (5th Cir. 1970), and *U.S.*

10

*ex rel. McKenzie v. Savoretti*, 200 F.2d 546 (5th Cir. 1952). First, like *Okoro*, these cases were decided well before the Fifth Circuit applied the categorical approach to determine whether a conviction is a CIMT. *See, e.g.*, *Amouzadeh v. Winfrey*, 467 F.3d 451, 455 (5th Cir. 2006) ("When determining whether a particular law meets the BIA's definition of 'moral turpitude,' we employ a categorical approach"); *See also*, *Chacon*, 704 F. App'x at 362 ("[W]e apply the categorical approach to determine whether a conviction is a CIMT.").

Second, *Hodulik*, *Smith*, and *McKenzie* do not discuss whether permanent deprivation of property is required under a state statute. *Smith* is about an evidentiary issue concerning "a prior conviction for possessing taxpaid whisky and beer in a 'dry' county," 420 F.2d at 428, and *McKenzie* concerns a certificate from the Registry of the Supreme Court of Nassau, Bahamas listing larceny as a crime the defendant committed there, 200 F.2d at 548. Significantly, none of those cases examined New York's petite larceny statute.

The BIA precedent on which the Government relies fails to support its position that the BIA strongly suggested petit larceny under New York law was a CIMT. *See*, Govt.'s Mem. at 8 (citing *Matter of Luis Manuel Germosen Nunez*, 2009 WL 2981799 (B.I.A. Aug. 2009) (unpublished); *Matter of Joseph Pierre*, 2004 WL 5537104 (B.I.A. Jan. 31, 2004) (per curiam) (unpublished); *Matter of De La Nues*, 18 I. & N. Dec. 140 (B.I.A. 1981); *Matter of Neely & Whylie*, 11 I. & N. Dec. 864, 866 (B.I.A. 1966)). The Government relied on these same cases in *Obeya*, to no avail. As the Second Circuit observed, these cases are "unconvincing" for the proposition that, before *Diaz-Lizarraga*, BIA precedent established that petit larceny under N.Y. Penal Law § 155.25 was a CIMT. *Obeya*, 884 F.3d at 447. This finding also is consistent with the Second Circuit's finding in *Wala*, decided three years prior to Defendant's removal proceedings, that the BIA ordinarily considered theft crimes a CIMT when a *permanent* taking was intended and, in

11

some cases, the BIA stated that larceny was a CIMT without distinguishing between a permanent and temporary taking. *See*, *Wala*, 511 F.3d at 106. Notably, and as relevant here, the Second Circuit in *Wala* further observed that the BIA had "suggested that whether this distinction actually exists [was] an open question." *Id.* (citing *In re Jurado-Delgado*, 24 I. & N. Dec. 29, 33 (B.I.A. 2006)). In fact, the BIA readily admitted in *Matter of Obeya*, 26 I. & N. Dec. 856 (B.I.A. 2016) that it had "long held that a theft offense only involves moral turpitude if it is committed with the intent to permanently deprive the owner of property." Moreover, the BIA reinforced this position in *Diaz-Lizarraga*, when it explicitly stated that it "revist[ed] [its] precedent decisions." *Diaz-Lizarraga*, 26 I. & N. Dec. at 856.

Immigration Counsel avers that, at the time of the 2010 removal order, he "understood from [his] experience and case law that petit larceny was a crime involving moral turpitude in the Fifth Circuit." Tinoco Decl. ¶ 6. However, given the state of the law at the time of the 2010 removal proceedings, it is apparent that Immigration Counsel incorrectly understood petit larceny under New York law to be a CIMT and advised Defendant under this erroneous assumption. Notably, he made no attempts to research the issue despite the Supreme Court's directive that a categorical approach be utilized in analyzing state statutes and the Fifth Circuit's adherence to that approach as discussed above.

  2.  <u>Immigration Counsel's Performance Was Constitutionally Deficient</u>

In the Second Circuit, "evidence of a defense counsel's decision-making process sometimes demonstrates constitutional deficiency." *Greiner v. Wells*, 417 F.3d 305, 325 (2d Cir. 2005). The Second Circuit recognizes deficient performance where counsel has made a legal error or has a misunderstanding of the law. *See, e.g.*, *United States v. Hansel*, 70 F.3d 6, 8 (2d Cir.

1995); *See also*, *Greiner*, 417 F.3d at 325 (collecting cases finding various kinds of deficient counsel performance).

In prior deportation cases, the Second Circuit has found procedural error where counsel failed to file a § 212(c) application timely or advise the defendant of his right to file a § 212(c) application. *See*, *Scott*, 394 F.3d at 117; *United States v. Perez*, 330 F.3d 97, 102 (2d Cir. 2003). Courts in this circuit also have found procedural error where counsel failed to advise the defendant regarding basic tenets of immigration law. *United States v. Gonzalez*, 2015 WL 3443942, at *10 (S.D.N.Y. May 29, 2015) ("[C]ompetent counsel would have understood that Gonzalez's choice was between certain deportation and seeking voluntary departure, and advised Gonzalez that—whatever his desires were to remain in the United States—his only rational choice was to seek voluntary departure.").

Here, competent immigration counsel would not have mistaken the law upon conducting minimal research on the question of whether petit larceny under New York law was a CIMT. *See*, *United States v. Lopez-Chavez*, 757 F.3d 1033, 1042-43 (9th Cir. 2014) (finding ineffective assistance of counsel in a deportation proceeding where counsel failed "to do the minimal research" that would have led to the conclusion of an "open issue" for removability). In an era where courts "generally employ a 'categorical approach' to determine whether the state offense is comparable to an offense listed in the INA," *Moncrieffe*, 569 U.S. at 190, competent immigration counsel would have been aware of, or would have been able to ascertain quickly, the BIA's traditional position that, larceny required a permanent taking and that New York's petit larceny statute did not require a permanent taking. *See*, *Lopez-Chavez*, 757 F.3d at 1043 ("It was therefore ineffective for an attorney to fail to pursue the open issue, just as it was ineffective to stipulate that [the defendant] had committed a deportable offense when the question remained open at the time

of concession."). Immigration Counsel should have, but did not, advise Defendant about pursuing an appeal for this viable legal argument.

Immigration Counsel's omission to conduct research on the issue, and failure to advise his client that (1) whether petit larceny under New York law was a CIMT was a viable appellate issue per the BIA in the Fifth Circuit and (2) the BIA's "traditional" position was that larceny required a permanent taking in order to be a CIMT, which New York's petit larceny statute did not require, constituted ineffective assistance of counsel. Accordingly, Immigration Counsel's performance was constitutionally deficient.

### B. Defendant Was Prejudiced By Immigration Counsel's Error

Next, the Court considers whether it is reasonably probable that, but for Immigration Counsel's unprofessional errors, the result of the proceedings would have been different. *See*, *Williams*, 733 F.3d at 455 (citing *Cerna*, 603 F.3d at 40-41). The Court concludes that the result of the proceedings would have been different but for Immigration Counsel's unprofessional errors.

"'[P]rejudice' in the context of § 1326(d) 'is shown where there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Scott*, 394 F.3d at 117 (quoting *United States v. Copeland*, 376 F.3d 61, 73 (2004) (in turn quoting *Strickland*, 466 U.S. at, 694)). "As the Supreme Court has defined it, 'a reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

To demonstrate prejudice, a removable person must establish that, "absent the procedural errors, he would not have been removed." *Fernandez-Antonia*, 278 F.3d at 159. Although the Second Circuit has declined "to state the quantum of proof necessary for [a removeable person] to succeed in his demonstration of prejudice on collateral review," the Circuit has suggested that a showing that there was a reasonable likelihood that a removeable person would not have been

deported or a plausible showing of such might be sufficient. *Id.* at 159-60. In determining whether there is a reasonable probability that Defendant would have succeeded on appeal of his deportation order, the Court must consider the information available to Immigration Counsel at the time. *Cerna*, 603 F.3d at 41.

Defendant contends that, if Immigration Counsel had raised the issue that petit larceny under N.Y. Penal Law § 155.25 was not a CIMT, there is a reasonable probability that he would have succeeded either at the removal hearing or on appeal. Def.'s Mem. at 10. The Government contends that it is not ineffective assistance of counsel to fail to anticipate later developments of the law and that "[i]t is entirely unclear that the BIA would have ruled in [D]efendant's favor." *Id.* at 14, 17-18. The Government also contends that Immigration Counsel "may not have argued that petit larceny was not a CIMT for a number of reasons" including that "it appears from the record and [Immigration Counsel's] affidavit that [D]efendant did not want to engage in protracted litigation or remain in detention." Govt.'s Mem. at 16.

As discussed above, whether petit larceny under N.Y. Penal Law § 155.25 involves moral turpitude was an unresolved question for the Fifth Circuit at the time of the 2010 removal proceedings. Furthermore, Fifth Circuit case law clearly applied the categorical approach by 2010 and recognized that the BIA traditionally considered larceny a CIMT only if it included intent to permanently deprive an owner of property. *Chacon*, 704 F. App'x at 361. Although *Chacon* was decided in 2018, there is no countervailing Fifth Circuit precedent on this point. Notably, none of the Fifth Circuit cases cited by the Government utilized the categorical approach or concerned an examination of New York's petite larceny statute, nor did Immigration Counsel consider BIA cases or Second Circuit cases that did so.

15

Had the Fifth Circuit applied the categorical approach to the New York petite larceny statute, there is a reasonable probability that it would have concluded that "a conviction for petit larceny in New York need not involve an intent to permanently deprive another of property," just as the Second Circuit did in *Obeya*. *Id.* at 449-50 ("Because a 'virtually permanent' deprivation of property must be something less than 'permanent' deprivation, it is clear that, whether we look to the plain meaning of the statute or to judicial interpretation, a conviction for petit larceny in New York need not involve an intent to permanently deprive another of property."). The Second Circuit's analysis of N.Y. Penal Law § 155.25 in *Obeya* also comports with the Fifth Circuit's requirement that courts "read the statute at its minimum, taking into account the minimum criminal conduct necessary to sustain a conviction under the statute" when conducting a categorical analysis. *Amouzadeh*, 467 F.3d at 455 ("'[I]f the orbit of the statute may include offenses not inherently entailing moral turpitude,' then the crime is not a crime involving moral turpitude."); *Chacon*, 704 F. App'x at 362 ("[O]ur court reaffirmed that we look to only the minimum reading of the statute, instead of examining whether there is a 'realistic probability' that the statute applies to conduct that falls outside the definition of a CIMT.").

The Government contends that Immigration Counsel "cannot be faulted for failing to advance such an argument in 2010 when the Fifth Circuit and BIA case law was murky, at best." Govt.'s at 17 (citing *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight[.]")). However, it is not the future development in the law that makes Immigration Counsel's performance constitutionally deficient, but Immigration Counsel's failure to consider a categorical analysis of the statute, particularly since such an analysis was required at the time based on United States Supreme Court precedent, and was the analysis conducted in 2007 by the Second Circuit in *Wala*.

16

The Government further maintains that, regardless of Immigration Counsel's mistake of law, Defendant should not be permitted to "disown his prior informed decisions," particularly because defendant "preferred to return to his home country of Peru instead of engaging in protracted detention to pursue litigation." Def.'s Mem. at 16; Tinoco Decl. ¶ 7. "However, a client's insistence on expediting a case is no excuse for failing to research and advise a client that there is no sound basis for the charges. A concession of removability under these circumstances cannot be considered a reasonable tactical decision." *In Re Mahmood Shafiee*, 2007 WL 1168488, at *1 (B.I.A. Mar. 2, 2007) (unpublished). Under the circumstances here, it is a bit disingenuous to assert that Defendant's decision to return to his native country was "informed." "For non-citizens at risk of deportation the consequences of inadequate counsel can be devastating." *Cerna*, 603 F.3d at 36. "The importance of accurate legal advice for noncitizens accused of crimes has never been more important." *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010).

Here, the facts amply support a finding that Defendant was not convicted of two crimes involving moral turpitude as required for removal under 8 U.S.C. § 237(a)(2)(A)(ii). Defendant has demonstrated prejudice because there is a reasonable probability Defendant ultimately would have been victorious had counsel properly contended that the notice to appear was facially deficient.

Accordingly, Defendant has demonstrated that the removal proceeding was fundamentally unfair pursuant to § 1326(d)(3).

## III. Defendant Meets His Burden To Collaterally Attack The Indictment

The Court next turns to the first and second prongs of 8 U.S.C. § 1326(d) because Defendant has established the third prong, fundamental unfairness. "[I]neffective assistance of counsel can be grounds for excusing the administrative exhaustion requirement of 8 U.S.C.

§ 1326(d)(1)." *Cerna*, 603 F.3d at 42. In addition, when there is a deprivation of judicial review of a removeable person's deportation, that deportation cannot be used as the basis for unlawful reentry under § 1326. *Mendoza-Lopez*, 481 U.S. at 840. A removeable person may be deprived of judicial review where ineffective assistance of counsel deprived him of a meaningful opportunity for judicial review. *Cerna*, 603 F.3d at 42. "Where a waiver of the right to appeal is not knowing, an alien is deprived of the opportunity for judicial review." *Copeland*, 376 F.3d at 68 n.6.

At the removal hearing, Defendant waived an instruction of his rights by the IJ and waived his right to appeal. These waivers were not made knowingly and intelligently because of the constitutionally deficient performance of Defendant's Immigration Counsel discussed above. *Id.* ("To the extent that the district court's conclusion that [defendant] could not show that the entry of the deportation order was fundamentally unfair was predicated on its factual determination that he knowingly and intelligently waived his administrative remedies, it is flawed."). Defendant did not have an opportunity to assess adequately whether he should challenge the notice of removal in light of the reasonably probable chance that one of the two underlying crimes of his removal order was not a CIMT.

Accordingly, Defendant's failure to exhaust his administrative remedies and his failure to seek judicial review under § 1326(d) is excused because of the fundamental unfairness of Immigration Counsel's deficient performance.

## IV. The IJ's Mistake Of Law Is Insufficient To Collaterally Attack The Indictment

In addition to Immigration Counsel's deficient performance, Defendant contends that the IJ's mistake of law at the removal hearing provides "a separate and independent basis" to collaterally attack the indictment. Def.'s Mem. at 6. In doing so, Defendant relies on *United States*

*v. Sosa*, 387 F.3d 131, 136 (2d Cir. 2004) and *United States v. Calderon*, 391 F.3d 370, 375 (2d Cir. 2004). The Government correctly contends that the facts of *Sosa* and *Calderon* are distinguishable. Govt.'s Mem. at 11.

*Sosa* and *Calderon* are distinguishable because, in those cases, the IJ failed to inform or misinformed an individual subject to a deportation order of his rights. In *Sosa*, the immigration judge erred by misadvising an uncounseled removeable person about the availability of relief from removal. 387 F.3d at 136-37 ("The issues on this appeal arise from the fact that the IJ never informed Sosa that he was eligible to seek discretionary relief from deportation under former Section 212(c) of the INA"). In *Calderon*, the immigration judge incorrectly advised the removeable person that relief from removal was not available when it was. 391 F.3d at 372 (Calderon was advised incorrectly by the IJ that "he was ineligible for discretionary relief from removal under former section 212(c)").

Defendant does not contend that the IJ misinformed or failed to inform Defendant of his rights during the proceeding. Although the IJ failed to recognize the appealability of the issue of whether New York's petite larceny statute was a CIMT, his performance is distinguishable from that of the mistakes made in *Sosa* and *Calderon*.

Accordingly, the IJ's mistake of law does not provide a separate and independent basis to satisfy the requirements of 8 U.S.C. § 1326(d).

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss the indictment is granted.

SO ORDERED.

Dated: Brooklyn, New York
     April 11, 2019

                                              /s/
                                    DORA L. IRIZARRY
                                        Chief Judge